UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VICTOR D. SMITH,

                                    Plaintiff,

                                                        9:07-CV-1264
v.                                                      (DNH/GHL)

BRIAN FISCHER, NYS DOCS COMMISSIONER, et al.,

                                    Defendants.

_____

APPEARANCES:                                OF COUNSEL:

Victor D. Smith, 04-B-0920
   Plaintiff, *Pro Se*
21 Mill Street
Apartment #3
Sodus, New York 14551

HON. ANDREW M. CUOMO                         SHOSHANAH V. ASNIS, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
New York, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Victor D.

Smith alleges that seven employees[1] of the New York State Department of Correctional Services ("DOCS") wrongfully confined him to the Special Housing Unit ("SHU") and prevented him from attending his mother's wake.   Currently pending before the Court is Defendants' motion to dismiss the amended complaint (Dkt. No. 15) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 28.)  For the reasons that follow, I recommend that Defendants' motion be granted.

## I.      BACKGROUND

### A.      Summary of Plaintiff's Complaint

The amended complaint (Dkt. No. 15) ("the complaint") is the operative pleading in this case.  It alleges that:

1.      On August 13, 2007, Defendant Adamik issued a misbehavior report charging Plaintiff with various offenses.  (Dkt. No. 15 at ¶ 6(1).)

2.      Defendants held Plaintiff in the SHU at Oneida Correctional Facility pending completion of a Tier III hearing.  (Dkt. No. 15 at ¶ 6(1).)

3.      The Tier III hearing was convened on August 17, 2007.  Defendant Badger was the hearing officer.  He adjourned the hearing until August 28, 2007.  (Dkt. No. 15 at ¶6(2).)

4.      Plaintiff's Tier III Hearing was reconvened on August 28, 2007.  Defendant Badger found Plaintiff guilty of all charges.  He sentenced Plaintiff to 90 days of S-Block confinement at Orleans Correctional Facility, with no credit for the time Plaintiff served in the SHU pending completion of his hearing.   (Dkt. No. 15 at ¶6(2).)  Plaintiff also lost recreation,

---

[1]      Brian Fischer (Commissioner of DOCS), Susan Connell (Superintendent of Oneida Correctional Facility), John Badger, Karl Adamik, Ivy Lombardo (Acting Superintendent of Orleans Correctional Facility), Anthony Labriola, and Peter Naughton.

packages, commissary, and phone privileges and three days of good time credits.  (Dkt. No. 15, Ex. A.)

5.      Thereafter, while Plaintiff was being held in the S-Block, Defendants Connell, Labriola, Lombardo, and Naughton denied Plaintiff's requests for discretionary review.  (Dkt. No. 15 at ¶ 6(3).

6.      On October 25, 2007, Plaintiff filed a claim with the New York State Court of Claims, claiming that DOCS officials had wrongfully denied him permission to attend his mother's wake.  (Dkt. No. 15 at ¶5(b).)

7.      On October 26, 2007, Albert Prack, acting on behalf of Defendant Brian Fischer, reversed the disciplinary charges against Plaintiff.  He concluded that Defendant Adamik's misbehavior report did not provide enough information to support the charges.  (Dkt. No. 15 at ¶6(3) and Ex. B.)

8.      Despite the reversal of the charges on October 26, 2007, Defendants Labriola and Lombardo denied Plaintiff's request to be released back into the general population and continued to hold him in the S-block under a "retention admission" status.  (Dkt. No. 15 at ¶ 6(4).)

9.      Plaintiff was released to the general prison population on November 21, 2007. (Dkt. No. 15 at ¶ 6(4).)

Plaintiff complains that Defendants' actions resulted in him being "falsely confined/imprisoned under sanctions for 98 days," including "14 days[2] prior to completion of a

---

[2]      Elsewhere in the complaint, Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't Hearing *beyond* the 14 day time requirement to complete said hearing."  (Dkt. No. 15 at ¶ 6(1), emphasis added.)  According to the timeline presented in the complaint, fifteen days passed between the time Defendant Adamik issued the misbehavior

sup't (sic) hearing and 24 days following the reversal of the charges."  (Dkt. No. 15 at ¶7.)

Plaintiff also complains that he was "purposely denied an approved wake visit."  (Dkt. No. 15 at

¶ 7.)  Defendants' actions, Plaintiff asserts, amounted to "neglect, unfair treatment and reprisal-

based conduct" that "served to create mental anxiety, irritability, paranoia and sleep deprivation

at a critically sensitive juncture."  (Dkt. No. 15 at ¶7.)

      Plaintiff's legal arguments, liberally construed, appear to assert four causes of action:  (1)

a procedural due process claim under the Fourteenth Amendment; (2) a substantive due process

claim under the Fourteenth Amendment; (3) an inadequate-prison-condition claim under the

Eighth Amendment; and (4) an equal protection claim under the Fourteenth Amendment.

      In his prayer for relief, Plaintiff requests $15,000 in compensatory damages "for mental

and emotional injury" plus $10,000 in punitive damages.  (Dkt. No. 15 at ¶ 9.)

    **B.**    **Summary of Grounds in Support of Defendants' Motion**

      Defendants argue that (1) the complaint fails to allege facts plausibly suggesting a

violation of the Fourteenth Amendment because Plaintiff has not alleged any "atypical and

significant hardship"; (2) the complaint fails to allege facts plausibly suggesting a violation of

the Eighth Amendment because (a) Plaintiff's confinement in the SHU does not constitute cruel

and unusual punishment as a matter of law; and (b) prisoners have no liberty interest in funeral

visits; (3) the complaint fails to state a claim under the Equal Protection Clause because Plaintiff

does not allege that he was treated any differently than any other similarly situated person; (4)

the complaint fails to allege facts plausibly suggesting that Defendants Connell, Fischer,

---

report on August 13 and the completion of the disciplinary hearing on August 28.  For the
purposes of this decision, I have assumed that Plaintiff was confined for 15 days pending
completion of the hearing.

Labriola, Lombardo, and Naughton were personally involved in any of the constitutional violations alleged; (5) Plaintiff's claim for compensatory damages is barred by 42 U.S.C. § 1997e(e) because he has not alleged any facts plausibly suggesting that he suffered a physical injury; and (6) Defendants are protected by the doctrine of qualified immunity. (Dkt. No. 28-2.) I will address only Defendants' first, second and third arguments, as they are dispositive.

### C.    Summary of Plaintiff's Response to Defendants' Arguments

In response to Defendants' motion to dismiss, Plaintiff argues that:

1.    There can be no governmental immunity extended to Defendants because they negligently performed their ministerial duties;

2.    Defendants breached administrative procedures and protocols by mishandling his Tier III hearing, denying his request to attend his mother's wake, and confining him to excessive detention in the SHU after the charges against him were reversed; and

3.    As a result of not attending his mother's wake, Plaintiff now suffers from mental anxiety, irritability, paranoia, and sleep deprivation. (Dkt. No. 29.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2);[3] or (2) a challenge to the legal cognizability of the claim.[4]

---

[3]    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[5]  The main purpose of this rule is to "facilitate a proper decision on the

---

formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[4]      *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[5]      *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

merits."[6]  A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[7]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[8]  However, it is well established that even this liberal notice pleading standard "has its limits."[9]  As a result, several Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard.[10]

---

[6]      *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[7]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[8]      *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[9]      2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[10]      *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v.*

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[11] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some

*Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*. *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[11]     The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, 127 S. Ct. at 1969.

factual allegation[s]." *Id.* [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[12]  The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[13]

_____

[12]     *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at \*14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Bell Atlantic* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Bell Atlantic's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Bell Atlantic*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[13]     *See, e.g., Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Rule 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Bell Atlantic*, 127 S. Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever.[14] There must still be enough facts alleged to raise a right to relief above the

---

[14]     For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S. Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8 and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id*. at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id*. at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id*. This point of law is hardly a novel one. For example, numerous

10

speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[15]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[16]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[17]  Moreover, "courts

decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[15]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[16]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[17]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96-CV-7544, 1997 WL 714878, at *1, n. 2

must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

they suggest."[18]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[19]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[20]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[21]

---

(S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

[18]       *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

[19]       *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[20]       *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[21]       *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted]; *see*, *e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[22] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[23]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se*

_____

(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS' established grievance process–was substantive and not formal in nature, rendering repleading futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and not formal in nature, rendering repleading futile) [citations omitted]; *Hylton v. All Island Cob Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the errors in his complaint–which included the fact that plaintiff alleged no violation of either the Constitution or laws of the United States, but only negligence–were substantive and not formal in nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D. Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[22]    *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[23]    *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord, Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691 [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

civil rights plaintiffs must follow.[24]  Stated more plainly, when a plaintiff is proceeding *pro se*,

"all normal rules of pleading are not absolutely suspended."[25]

## III.   ANALYSIS

### A.   Plaintiff Has Not Stated a Procedural Due Process Claim

The complaint alleges that Defendants violated Plaintiff's due process rights under the

Fourteenth Amendment.  (Dkt. No. 15 at ¶ 7.)  The undersigned has construed the complaint as

asserting both a procedural due process claim and a substantive due process claim[26].  Construed

---

[24]     *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[25]     *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[26]     Defendants construed the complaint as asserting only a procedural due process claim.  (Dkt. No. 28-2 at 10-11.)

liberally, the complaint asserts that Plaintiff's procedural due process rights were violated by (1) the length of his detention in the SHU; (2) the fact that the disciplinary charges were based on a false report; (3) the fact that he was held for 15 days in the SHU prior to the completion of his disciplinary hearing; and (4) the denial of the wake visit.

      1.      <u>The length of Plaintiff's detention in the SHU</u>

Regarding the length of his detention, Plaintiff asserts that his due process rights were violated because he was "falsely confined/imprisoned under sanctions for 98 days." (Dkt. No. 15 at ¶ 7.) Defendants argue that the complaint fails to state such a claim because Plaintiff has failed to allege any "atypical and significant hardship." (Dkt. No. 28-2 at 3-5.) Defendants are correct.

In order to state a claim for violation of his procedural due process rights, Plaintiff must allege facts plausibly suggesting that (1) he was deprived of a liberty interest; (2) without due process of law. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). Regarding the first prong of this test, "[i]t is undisputed ... that New York state law creates a liberty interest in not being confined to the SHU." *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004). The issue, then, is whether Plaintiff's confinement in the SHU imposed "an atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."

In the Second Circuit, determining whether a disciplinary confinement in the SHU constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer*, 364 F.3d at 64.  Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions[27]." *Palmer*, 364 F.3d at 65.  For confinements of an "intermediate duration - between 101 and 305 days - development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64-65.  Disciplinary segregation lasting more than 305 days implicates a protected liberty interest even if served under "normal" SHU conditions because a term of that length is a "sufficient departure from the ordinary incidents of prison life." *Palmer*, 364 F.3d at 65 (quoting *Colon v. Howard*, 215 F.3d 227,  231 (2d Cir. 2000)).

Here, Plaintiff alleges that he served 98 days in the SHU.  Accordingly, a protected liberty interest is implicated only if Plaintiff was confined under conditions "more severe" than "normal" SHU conditions.  Plaintiff has alleged no such conditions.  Compare *Welch v. Bartlett*, 196 F.3d 389 (2d Cir. 1999)(plaintiff alleged that while in the SHU he received "inadequate amounts of toilet paper, soap and cleaning materials, a filthy mattress, and infrequent changes of clothes); *Palmer*, 364 F.3d at 66 (plaintiff alleged that he suffered unusual SHU conditions such as being deprived of his property, being mechanically restrained whenever he was escorted from his cell, and being out of communication with his family); *Ortiz v. McBride*, 380 F.3d 649 (2d

---

[27]      "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

Cir. 2004) (plaintiff alleged that he was confined to his cell for 24 hours a day, not permitted to shower for weeks at a time, denied hygiene products, and denied utensils); *Wheeler v. Butler*, 209 F.App'x 14 (2d Cir. 2006)(plaintiff alleged that he was denied the use of his hearing aids during his SHU confinement).  Therefore, Plaintiff has not sufficiently alleged that his confinement in the SHU deprived him of a protected liberty interest.

District courts in the Second Circuit are split on whether a prisoner can state a procedural due process cause of action when he alleges that he served less than 101 days in the SHU but does not allege conditions more severe than normal SHU conditions.  Compare *Gonzalez-Cifuentes v. Torres*, No. 9:04-cv-1470 GLS/DRH, 2007 WL 499620, at * 3 (N.D.N.Y. Feb. 13, 2007)("The Second Circuit has held that at least where the period of confinement exceeded thirty days, refined fact-finding is required to resolve defendants' claims under *Sandin*.  No such fact-finding can occur ... on a motion to dismiss")  and *Smart v. Goord*, 441 F. Supp. 2d 631, 641 (S.D.N.Y. 2006)("Smart has not alleged that the conditions of her confinement were more severe than normal SHU conditions ... However, such detailed factual allegations are not necessary to withstand a motion to dismiss ... Since Smart has alleged that she was confined for seventy days, she has met her burden in alleging the deprivation of a protected liberty interest") with *Alvarado v. Kerrigan,* 152 F. Supp. 2d 350 (S.D.N.Y. 2001) (granting motion for judgment on the pleadings where prisoner's allegations about the conditions of his 93-day SHU confinement failed to "elevate his confinement to the level of deprivation required under *Sandin)*; *Sales v. Barizone*, No. 03 Civ. 6691RJH, 2004 WL 2781752, at *7 (S.D.N.Y. Dec. 2, 2004)(granting motion to dismiss with leave to amend because plaintiff's "due process claim arising out of two months' confinement in the SHU ... cannot survive the *Sandin* test absent further allegations") *Tookes v. Artuz*, No. 00 Civ. 4969 RCC HBP, 2002 WL 1484391, at * 3 (S.D.N.Y. July 11,

17

2002) ("No such additional egregious circumstances are pled here.  Indeed, the complaint is devoid of any allegations regarding the circumstances of plaintiff's confinement.  Nor has [plaintiff] responded to the defendants' motion in order to provide further detail.  Therefore, dismissal of plaintiff's due process claims is appropriate"); and *Prince v. Edwards*, No. 99 Civ. 8650, 2000 WL 633382, at *5 (S.D.N.Y. May 17, 2000) (dismissing case with prejudice where the complaint contained "no allegations whatever regarding the conditions of [prisoner's 66-day] confinement.").  The Second Circuit has never addressed this issue directly[28].

    The undersigned agrees with the *Alvarado, Sales*, *Tookes,* and *Prince* courts that a motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions.  The undersigned adopts this view for two reasons.  First, as discussed at length above, Rule 8 requires that a complaint include factual allegations that raise a right to relief above the speculative level to the plausible level.  Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU

---

[28]     While the Second Circuit has stated that "development of a detailed record will assist appellate review" of SHU cases and that "development of a detailed record of the conditions of the confinement relative to ordinary conditions is required," it has done so only in cases involving "intermediate" SHU confinements of 101 to 305 days.  *Colon*, 215 F.3d at 232; *Palmer,* 364 F.3d at 64-65.  Even in this "intermediate" context, where a detailed record is "required," the Second Circuit has not remanded a case for further development of the record absent an allegation of severe SHU conditions.  For example, in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), the plaintiff was confined to a super-restrictive housing unit for six months.  He sued, arguing in part that his procedural due process rights were violated.  The defendants moved to dismiss.  The district court denied the motion, finding that the plaintiff had alleged the deprivation of a liberty interest.  The defendants brought an interlocutory appeal.  The Second Circuit affirmed, finding that "the Plaintiff's confinement of more than six months fell in the intermediate range, thereby requiring inquiry into the conditions of his confinement, which he *sufficiently alleges* to have been severe."  *Iqbal*, 490 F.3d at 163 (emphasis added).

conditions, his right to relief under a procedural due process theory is purely speculative.

Second, the Second Circuit's manner of reviewing motions to dismiss in SHU confinement cases

suggests that dismissal is the better course.  In its cases, the Second Circuit has focused on the

*content* of the prisoner's allegations regarding SHU conditions rather than establishing a bright-

line rule that a determination of whether conditions were "atypical and significant" cannot be

resolved on a Rule 12(b)(6) motion.  For example, in *Ortiz*, the district court granted the

defendants' motion to dismiss a case in which a prisoner complained of a 90-day SHU

confinement.  The Second Circuit reversed, not because the *Sandin* issue can never be decided at

the motion to dismiss stage, but because *the prisoner had alleged the existence of "conditions in*

*SHU far inferior to those prevailing in the prison in general*."  *Ortiz*, 380 F.3d at 655 (emphasis

added).

Plaintiff's bare allegation that his procedural due process rights were violated by his 98-

day confinement in the SHU is insufficient to state a claim.  Therefore, I recommend that this

claim be dismissed with leave to amend.

> 2.    False accusation

To the extent that Plaintiff claims that his SHU confinement violated his due process

rights because it stemmed from a false accusation, I note that "a prison inmate has no general

constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v.*

*Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d

Cir. 1986)); *accord*, *Pittman v. Forte*, 01-CV-0100, 2002 WL 31309183, *5 (N.D.N.Y. July 11,

2002) (Sharpe, M.J.).  The only way that false accusations contained in a misbehavior report can

rise to the level of a constitutional violation is where the false accusation is based on something

such as "retaliation against the prisoner for exercising a constitutional right." *Boddie*, 105 F.3d

19

at 862; *accord*, *Murray v. Pataki*, 03-CV-1263, 2007 WL 965345, at *8 (N.D.N.Y. March 5,

2007) (Treece, M.J.) [citations omitted].  Here, Plaintiff does not claim that the misbehavior

report was issued in retaliation for Plaintiff's exercise of a constitutional right.  Read broadly, the

complaint alleges that Defendants took some actions in retaliation for Plaintiff's filing of a

complaint with the Court of Claims regarding the denial of the wake visit.  However, Defendant

Adamik issued the misbehavior report several months *before* Plaintiff filed his complaint with

the Court of Claims.  Therefore, Defendant Adamik could not possibly have been retaliating for

Plaintiff's exercise of his constitutional right of access to the courts when he issued the

misbehavior report.  Accordingly, the complaint does not state a claim for a procedural due

process violation based on the filing of an allegedly false misbehavior report and I recommend

that the claim be dismissed with leave to amend.

     3.    <u>SHU confinement pending completion of disciplinary hearing</u>

     Plaintiff alleges that he was "held in the ... SHU pending completion of a Tier III Sup't

Hearing beyond the 14 day time requirement to complete said hearing."  (Dkt. No. 15 at ¶6(1).)

DOCS regulations provide that:

> The disciplinary hearing or superintendent's hearing must be
> completed within 14 days following the writing of the misbehavior
> report unless otherwise authorized by the commissioner or his
> designee. Where a delay is authorized, the record of the hearing
> should reflect the reasons for any delay or adjournment, and an
> inmate should ordinarily be made aware of these reasons unless to
> do so would jeopardize institutional safety or correctional goals.

N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 251-5.1(b).  Pursuant to this regulation,

New York has granted inmates an interest in remaining free from restraints of more than 14 days

pending a disciplinary hearing unless the commissioner or his designee authorizes a delay.  Here,

the complaint alleges that Defendant Badger authorized a delay.  (Dkt. No. 16 at ¶ 6(2).)  The

complaint does not state whether or not the record of the hearing reflected the reasons for the delay.  However, that fact is immaterial because the regulation does not require that the record reflect the reason: it merely states that the record "should" reflect the reason.  See *Dallio v. Spitzer*, 343 F.3d 553, 562 (2d Cir. 2003)("'Shall' is universally understood to indicate an imperative or mandate, whereas 'should,' to the extent it implies any duty or obligation, generally references one originating in propriety or expediency").  Accordingly, Plaintiff did not have a state-created liberty interest in remaining free from the confinement or restraint of being held in the SHU for 15 days pending completion of his disciplinary hearing.  Even if he had such an interest, Plaintiff has not pleaded that a one-day delay imposed an "atypical and significant" hardship on him.  Indeed, such delays are reasonably routine.  See e.g. *Tookes v. Artuz*, No. 00 CIV 4969 RCC HBP, 2002 WL 1484391 (S.D.N.Y. July 11, 2002) (17-day delay between issuance of misbehavior report and conclusion of disciplinary hearing did not implicate procedural due process).  Therefore, Plaintiff has not alleged facts plausibly suggesting that his procedural due process rights were violated by the one-day delay in completing his disciplinary hearing.

    4.    <u>Wake visit</u>

Plaintiff's allegations regarding the denial of his wake visit do not state a claim for violation of his procedural due process rights.  Prisoners do not have a constitutionally protected interest in attending the funeral of a relative.  *Jackson v. Portuondo,* No. 9:01-CV-0379 (GLS/DEP), 2007 WL 607342, at * 12 (N.D.N.Y. Feb. 20, 2007); *Verrone v. Jacobson*, No. 95 CIV. 10495 (LAP), 1999 WL 163197, at *5 (S.D.N.Y. Mar. 23, 1999); *Green v. Coughlin*, No. 94 Civ. 3356 (JFK), 1995 WL 498808, at *1 (S.D.N.Y. Aug. 22, 1995); *Colon v. Sullivan*, 681 F.

Supp. 222, 223 (S.D.N.Y. 1988). Nor has such a right been created in New York by statute or

regulation.  The relevant New York statute states:

> [T]he commissioner of correctional services *may* permit any
> inmate confined by the department except one awaiting the
> sentence of death to attend the funeral of his or her father, mother,
> guardian or former guardian, child, brother, sister, husband, wife,
> grandparent, grandchild, ancestral uncle or ancestral aunt within
> the state, or to visit such individual during his or her illness if
> death be imminent ... but the exercise of such power shall be
> subject to such rules and regulations as the commissioner of
> correctional services shall prescribe, respecting the granting of
> such permission, duration of absence from the institution, custody,
> transportation and care of the inmate, and guarding against escape.

N.Y. Correct. Law § 113 (McKinney 2003)(emphasis added).  The use of the word "may"

indicates that the granting of wake visits is entirely discretionary.  See *Jackson*, 2007 WL

607342, at *11. Therefore, Plaintiff has not alleged facts plausibly suggesting that the denial of

the wake visit violated his procedural due process rights.

Because Plaintiff has not alleged any facts plausibly suggesting that he was deprived of a

liberty interest, the complaint fails to state claim for a violation of Plaintiff's procedural due

process rights.  I therefore recommend that this cause of action be dismissed with leave to

amend.

### B.   Plaintiff Has Not Stated a Substantive Due Process Claim

Although Plaintiff alleges that Defendants violated his right to due process, he has not

specifically invoked substantive due process.  However, given the special solicitude due to *pro

se* civil rights plaintiffs, I have deemed the complaint to include a substantive due process claim

and will address it *sua sponte* under 28 U.S.C. § 1915(e)(2).  As mentioned above,

 Defendants have not addressed any possible substantive due process claim.

22

"Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).  Very few conditions of prison life are "shocking" enough to violate a prisoner's right to substantive due process.  In *Sandin*, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs.  *Sandin*, 515 U.S. at 479 n.4, 484.  Courts have also noted that a prison official's refusal to obey a state court order to release a prisoner from disciplinary confinement may violate the prisoner's right to substantive due process. *Johnson v. Coughlin*, No. 90 Civ. 1731, 1997 WL 431065, at *6 (S.D.N.Y. July 30, 1997); *Arce v. Miles*, No. 85 Civ. 5810, 1991 WL 123952, at *9 (S.D.N.Y. June 28, 1991).

Plaintiff's complaint does not allege facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking or oppressive in the constitutional sense.  As discussed above, the complaint does not indicate that Plaintiff was held in unusual SHU conditions. Moreover, Plaintiff does not allege that Defendants refused to obey a state court order to release him from disciplinary confinement.  Rather, he alleges that Defendants failed to immediately release him after DOCS itself administratively reversed his disciplinary conviction.  (Dkt. No. 15 at ¶¶ 6(3), 7.)  Therefore, the complaint fails to state a claim for violation of Plaintiff's right to substantive due process and I recommend that the claim be dismissed with leave to amend.

### C.      Plaintiff Has Not Stated an Equal Protection Claim

Plaintiff alleges that Defendants denied him equal protection by confining him to the SHU.  (Dkt. No. 15 at ¶ 7.)  The Equal Protection Clause requires the government to treat all similarly situated people alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439

23

(1989).  To state a claim for a violation of the Equal Protection Clause, Plaintiff must allege facts plausibly suggesting that he was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 WL 34002605, at *4 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.), *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.).

Prisoners do not comprise a suspect or quasi-suspect class for Equal Protection purposes. *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) ("[N]either prisoners nor indigents are [members of a] suspect class . . . .") [citations omitted]; *Holley v. Carey*, 04-CV-2708, 2007 WL 2533926, at *7 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") (citations omitted) *rejected on other grounds* 2008 WL 2853924; *Coleman v. Martin*, 363 F. Supp.2d 894, 902 (E.D. Mich. 2005) ("Prisoners are not members of a protected class . . . .") (citation omitted).[29]

In the alternative to alleging membership in a suspect class, a plaintiff may state a claim for an equal protection violation under a "class of one" theory.  *Assoko v. City of New York*, 539

---

[29]      I note that, in addition, sex offenders, the mentally ill, the mentally handicapped, and the indigent do not comprise a suspect class for Equal Protection purposes.  *See Travis v. N.Y. State Div. of Parole*, 96-CV-0759, 1998 U.S. Dist. LEXIS 23417, at *12-13 (N.D.N.Y. Aug. 26, 1998) (Sharpe, M.J.) ("Sex offenders do not comprise a suspect or quasi-suspect class for Equal Protection purposes.") [citations omitted], *adopted*, 96-CV-0759, Decision and Order (N.D.N.Y. filed Nov. 2, 1998) (McAvoy, C.J.); *Selah v. Goord*, 04-CV-3273, 2006 U.S. Dist. LEXIS 51051, at *21 (S.D.N.Y. July 24, 2006) ("Neither sex offenders nor the mentally ill are a suspect class warranting heightened [or strict] equal protection scrutiny.") [citations omitted]; *Holley v. Carey*, 04-CV-2708, 2007 U.S. Dist. LEXIS 64699, *23 (E.D. Cal. Aug. 31, 2007) ("[N]either prisoners nor persons with mental handicaps are a suspect class entitled to heightened scrutiny.") [citations omitted]; *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) ("[N]either prisoners nor indigents are [members of a] suspect class . . . .") [citations omitted].

F. Supp. 2d 728 (S.D.N.Y. 2008).  In order to state such a claim, a plaintiff must allege (1) that

he was intentionally treated differently from other similarly situated individuals; and (2) that the

disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus[30].

*Id.*  Plaintiff has not alleged that he was treated differently from other similarly situated

individuals.  Therefore, Plaintiff has not stated a cause of action for violation of his rights under

the Equal Protection Clause and I recommend that the claim be dismissed with leave to amend.

### D.      Plaintiff Has Not Stated an Eighth Amendment Claim

Plaintiff claims that his SHU confinement and the denial of the wake visit violated his

Eighth Amendment rights.  (Dkt. No. 15 at ¶7.)

In order for Plaintiff to state a claim under the Eighth Amendment, he must show: (1)

that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and

(2) that the defendants acted with *deliberate indifference* to his health or safety.  *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y.

2005).  Deliberate indifference exists if an official "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837.  In considering the types of conditions that constitute a substantial risk

of harm, the court considers not only the seriousness of the potential harm and the likelihood that

---

[30]      The standard for proving a "class of one" case becomes much more stringent after
a case proceeds beyond the pleading stage.  After the pleading stage, a plaintiff must show that
"no rational person could regard the circumstances of the plaintiff to differ from those of a
comparator to a degree that would justify the differential treatment on the basis of a legitimate
government policy; and (that) the similarity in circumstances and difference in treatment are
sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  *Nielson
v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) *overruled to extent that it allows a class of one
claim by a public employee Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).  *See, e.g., Cohn v.
New Paltz Central School District*, 171 F. App'x 877 (2d Cir. 2006).

the harm will actually occur, but also any indications that unwilling exposure to that risk violates

contemporary standards of decency, in that society does not choose to tolerate this risk in its

prisons. *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 2482 (1993).

  Not every governmental action related to the interest and well-being of a prison inmate,

however, demands Eighth Amendment scrutiny. *Sanders v. Coughlin*, No. 87 Civ. 4535, 1987

WL 26872, at *2 (S.D.N.Y. Nov 23, 1987) (citing, *inter alia*, *Whitley*, 475 U.S. at 319). "After

incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual

punishment forbidden by the Eighth Amendment." *Id.* (quoting, *inter alia, Whitley*; internal

quotes omitted). Conduct not intended to be punishment must consist of "more than ordinary

lack of due care for the prisoner's interests or safety" to be considered cruel and unusual

punishment. *Id.* Mere negligence in the treatment of a prisoner, without more, is not actionable

under the Eighth Amendment. See *Farmer*, 511 U.S. at 837-38.

  The complaint's allegations regarding Plaintiff's SHU confinement do not state an Eighth

Amendment claim. Although the service of a disciplinary sentence under ordinary conditions

prevailing in the SHU "may implicate other constitutional rights, [it] does not rise to a level of

constitutional significance under the Eighth Amendment and . . . fails to support a claim of cruel

and unusual punishment under that provision." *Monroe v. Janes*, No. 9:06-CV-0859 FJS/DEP,

2008 WL 508905 at *7 (N.D.N.Y. Feb. 21, 2008) (dismissing Eighth Amendment claim where

prisoner alleged merely that he had served 76 days in the SHU) (*citing Warren v. Irvin*, 985 F.

Supp. 350, 357 (W.D.N.Y. 1997)). Here, Plaintiff does not allege that his confinement in the

SHU was served in anything other than ordinary conditions. Thus, he has not alleged any cruel

and unusual punishment that would provide the foundation for an Eighth Amendment claim.

The complaint's allegations regarding the denial of the wake visit fail to state an Eighth Amendment claim. Although Plaintiff cursorily states that the denial was "unfair" and "reprisal-based," he states no facts supporting those allegations. The Court of Claims opinion attached to the complaint refers to the denial as a "ministerial error." (Dkt. No. 15, Ex. D.) A "ministerial error" is not sufficiently cruel and unusual to be actionable under the Eighth Amendment. Therefore, the complaint does not allege facts plausibly suggesting that Defendants violated Plaintiff's Eighth Amendment rights and I recommend that the cause of action be dismissed with leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 28) be **GRANTED** with leave to amend.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[31]

---

[31]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff

**BE ALSO ADVISED** that the failure to file timely objections to this Report-Recommendation will **PRECLUDE LATER APPELLATE REVIEW** of any Order of judgment that will be entered. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: February 2, 2009
           Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

"offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans*, 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

28