UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VICTOR SMITH,

                                    Plaintiff,

                                                          9:07-CV-1264
v.                                                        (DNH/GHL)

BRIAN FISCHER, NYS DOCS COMMISSIONER, et al.,

                                    Defendants.

_____

APPEARANCES:                                OF COUNSEL:

Victor D. Smith, 04-B-0920
   Plaintiff, *Pro Se*
21 Mill Street
Apartment #3
Sodus, New York 14551

HON. ANDREW M. CUOMO                        ROGER W. KINSEY, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Victor

1

Smith alleges that seven employees[1] of the New York State Department of Correctional Services ("DOCS") wrongfully subjected him to disciplinary confinement and prevented him from attending his mother's wake.   Currently pending before the Court is Defendants' motion to dismiss the second amended complaint[2] (Dkt. No. 31 ) for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 38.)  For the reasons that follow, I recommend that Defendants' motion be granted.

I.      BACKGROUND

        The pending complaint (Dkt. No. 31) is, as previously noted, the second amended complaint in this case.  The first amended complaint alleged that Defendant Captain Karl Adamik issued a misbehavior report charging Plaintiff with various offenses.  (Dkt. No. 15 ¶ 6(1).)  As a result, Plaintiff was held in the Special Housing Unit ("SHU") pending a hearing. *Id.*  Defendant John Badger conducted the hearing and found Plaintiff guilty of all charges.  He sentenced Plaintiff to 90 days in the S-Block, with no credit for the time Plaintiff had served in the SHU.  *Id.* at ¶ 6(2).  While Plaintiff was being held in the S-Block, Defendants Susan Connell, Anthony Labriola, Ivy Lombardo, and Peter Naughton denied his appeals of his disciplinary sentence.  *Id.* at ¶ 6(3).  The disciplinary charges were ultimately administratively

---

        [1]      Brian Fischer (Commissioner of DOCS), Susan Connell (Superintendent of Oneida Correctional Facility), John Badger, Karl Adamik, Ivy Lombardo (Acting Superintendent of Orleans Correctional Facility), Anthony Labriola, and Peter Naughton.

        [2]      Defendants refer to the operative complaint as the "third amended complaint." The operative complaint is the second amended complaint.  The original complaint was filed on December 5, 2007.  (Dkt. No. 1.)  Plaintiff was ordered to file an amended complaint.  (Dkt. No. 8.)  He did so on April 23, 2008, but the document was stricken from the docket due to defects in Plaintiff's identification of defendants.  (Dkt. Nos. 13 and 14.)    Plaintiff filed the first amended complaint on June 3, 2008.  (Dkt. No. 15.)  Plaintiff filed the current complaint (Dkt. No. 31) after I recommended that the first amended complaint be dismissed.

reversed because Defendant Adamik's misbehavior report did not provide enough information to support the charges.  *Id.* at Ex. B.  Despite the reversal of the charges, Defendants Labriola and Lombardo denied Plaintiff's request to be released into the general population and continued to hold him in the S-Block.  *Id.* at ¶ 6(4).  As a result of these events, Plaintiff was confined in the SHU and the S-Block for a total of 98 days, 15 days of which were prior to completion of his disciplinary hearing and 24 days of which were after the charges were reversed.  *Id.* ¶ 7.

Plaintiff's first amended complaint also alleged that DOCS officials wrongfully denied him permission to attend his mother's wake.  *Id.* at ¶ 5(b).  Plaintiff filed an action in the New York State Court of Claims regarding the wake visit denial while he was serving his S-Block sentence.  *Id.*

Defendants moved to dismiss Plaintiff's first amended complaint.  (Dkt. No. 28.)  I recommended that the motion be granted with leave to amend.  (Dkt. No. 30.)  Specifically, I found that (1) the complaint did not state a procedural due process claim based on Plaintiff's disciplinary confinement because Plaintiff did not allege that he was subject to conditions harsher than normal SHU conditions; (2) the complaint did not state a retaliation claim because the alleged adverse action (filing charges against Plaintiff and confining him) occurred *before* the alleged protected conduct (filing suit in the Court of Claims regarding the denied wake visit); (3) the complaint did not state a procedural due process claim based on the denial of the wake visit because the granting of wake visits is entirely discretionary; (4) the complaint did not state a substantive due process claim because Plaintiff did not allege any facts plausibly suggesting that Defendants' conduct was arbitrary, conscience-shocking, or oppressive in the constitutional sense; (5) the complaint did not state an equal protection claim because Plaintiff did not allege

that he was treated differently from other similarly situated individuals; and (6) the complaint did not state an Eighth Amendment claim.

Before the District Court issued a final order on the motion to dismiss, Plaintiff filed a document that was later classified as the second amended complaint.  (Dkt. No. 31.)  In a cover letter accompanying the document, Plaintiff referred to it as an "amendment to the FACTS portion of [the] previously submitted, and received, Inmate Civil Rights Complaint."  (Dkt. No. 31, emphasis in original.)  In relevant part, the new document alleges that (1) Plaintiff offered to give Defendant Naughton information about the mental state of an inmate who died in the SHU "in exchange for special consideration" of Plaintiff's wake visit request; (2) Defendant Naughton assigned Defendant Adamik to meet with Plaintiff regarding the information; (3) After the meeting, Defendant Adamik charged Plaintiff with extortion, false statements, and action detrimental to the order of the facility because "Plaintiff attempted to extort with the ... information for the purposes of securing the ... deathbed visit"; (4) Defendant Adamik planted "a forged document and fictitious file" in Plaintiff's cell sometime prior to August 16, 2007; (5) at the disciplinary hearing on the extortion charge, Defendant Badger engaged in "the preservation of procedural safeguards/defects" and found Plaintiff guilty "despite clearly erroneous information in the misbehavior report"; (6) Defendant Badger did not credit Plaintiff for the 14 days he served prior to the completion of the hearing; and (7) during his confinement in the S-block, Plaintiff was denied medication for gout for approximately 20 days, moved to a top bunk after being assigned a bottom bunk, and assaulted by another inmate.  (Dkt. No. 31 at 2-3.)

On March 9, 2009, Judge Hurd issued an order adopting my Report-Recommendation in its entirety and granting Defendants' motion to dismiss the first amended complaint.  (Dkt. No.

4

32.)  On April 24, 2009, Judge Hurd ordered Defendants to "answer, or otherwise move, in regard to [P]laintiff's second amended complaint (Docket No. 31)."  (Dkt. No. 34.)

Defendants now move to dismiss the second amended complaint.  (Dkt. No. 38.) Defendants argue that (1) the complaint does not comply with the Federal Rules of Civil Procedure or Local Rule 7.1; (2) Plaintiff's claims are barred by the doctrine of collateral estoppel; (3) Plaintiff's procedural due process claim is without merit; (4) Plaintiff's Eighth Amendment claims are without merit; (5) Plaintiff fails to state an equal protection claim; (6) the complaint does not allege personal involvement by Defendants Fischer, Connell, Naughton, Lombardo, and Labriola; (7) the emotional distress claim must be dismissed; and (8) Defendants are entitled to qualified immunity.  *Id*.

Plaintiff has opposed the motion.  (Dkt. No. 41.)

## II.   LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer

5

more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint. *See Advanced Marine Tech. v. Burnham Sec .,Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

III.    **ANALYSIS**

   A.    **The Second Amended Complaint Does Not Comply With the Federal Rules of Civil Procedure or the Local Rules of this Court.**

Defendants argue that the second amended complaint must be dismissed because it does not comply with the Federal Rules of Civil Procedure or Local Rule 7.1(a). (Defs.' Mem. of Law at 4-5.) Defendants are technically correct. Federal Rule of Civil Procedure 8 requires that

a complaint contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought.  Here, Plaintiff's second amended complaint does not contain a statement of the grounds for the court's jurisdiction or a demand for relief.  Moreover, Plaintiff's attempt to amend only the "facts" section of his first amended complaint is prohibited by Local Rule 7.1(a)(4), which states that "[n]o portion of [a] prior pleading shall be incorporated into the proposed amended pleading by reference."

However, the procedural posture of this case weighs against dismissing the second amended complaint on these grounds.  The District Court had the second amended complaint before it when it granted Defendants' motion to dismiss the first amended complaint.  The District Court, rather than dismissing the document *sua sponte*, directed Defendants to answer or move to dismiss the second amended complaint.  (Dkt. No. 34.)  Therefore, I will address the merits of the second amended complaint rather than recommending that the Court dismiss it simply for its technical defects.

**B.    The Second Amended Complaint Is Not Barred by the Doctrine of Collateral Estoppel.**

Defendants argue that Plaintiff's claims are barred by the doctrine of collateral estoppel. (Defs.' Mem. of Law at 5-6.)  Defendants' argument is without merit.

Collateral estoppel is a doctrine that "may bar a party from litigating certain claims or issues *in a subsequent proceeding*."  *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (emphasis added).  Under collateral estoppel, "when an issue of ultimate fact has once been determined by a *valid and final judgment*, that issue cannot again be litigated by the same parties

*in a future lawsuit*." *Id.* at 613 (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)) (emphasis added).  "Collateral estoppel applies when (1) the issues in *both proceedings* are identical, (2) the issue in the *prior proceeding* was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the *prior proceeding*, and (4) the issue previously litigated was necessary to support a *valid and final judgment* on merits." *Id.* (emphasis added).  Here, there was no prior proceeding and there has been no final judgment.  Rather, the Court granted Defendants' motion to dismiss the previous version of Plaintiff's complaint *with leave to amend*. Plaintiff has simply filed an amended complaint as authorized by the Court.  Therefore, the doctrine of collateral estoppel does not bar Plaintiff's claims.

**C.    The Second Amended Complaint Does Not State a Procedural Due Process Claim.**

Defendants argue that Plaintiff has failed to state a procedural due process claim.  (Defs.' Mem. of Law at 7-9.)  Defendants are correct, but not for the reasons asserted in their motion to dismiss.

### 1.    Disciplinary Confinement

Plaintiff alleges that the disciplinary confinement imposed by Defendant Badger as a result of Defendant Adamik's misbehavior report violated his right to due process.  (Dkt. No. 31 at 3.)  In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Disciplinary confinement deprives a prisoner of a liberty interest if it imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier*, 280 F.3d at 80; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).  Where a prisoner

8

has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions[3] ... or a more fully developed record show[s] that even relatively brief confinements under normal SHU conditions [are], in fact, atypical." *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004).

If a plaintiff has sufficiently pleaded the deprivation of a liberty interest, the court must then determine whether the complaint pleads facts plausibly suggesting that the plaintiff received less process than was due.  Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.  *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).  In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense.  *Wolff*, 418 U.S. at 570.

If a prisoner has received all process due before being deprived of a liberty interest, he may still state a procedural due process claim if the decision of a prison disciplinary board is not

---

[3]        "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

based on "some evidence."  *Freeman v. Rideout*, 808 F.2d 949, 954 (2d Cir. 1986).

      a.     *Liberty Interest*

     Plaintiff's first amended complaint failed to state a due process claim because Plaintiff did not allege that he was subjected to any conditions "more severe" than "normal" SHU conditions while serving his disciplinary confinement.  Plaintiff was granted leave to amend to allege such conditions.  (Dkt. No. 30 at 19; Dkt. No. 32.)

     Plaintiff's second amended complaint alleges that he was deprived of a liberty interest during his disciplinary confinement because he was denied gout medication for a period of approximately 20 days, moved to a top bunk after being assigned a bottom bunk, and assaulted by another inmate.  (Dkt. No. 31 at 2.)

     Defendants' motion to dismiss does not address Plaintiff's new allegations, even in a cursory fashion.  Rather, Defendants simply repeat verbatim the arguments they asserted in their motion to dismiss the first amended complaint.  (Defs.' Mem. of Law at 7-9.)  The case on which Defendants primarily rely - *Tookes v. Artuz*, No. 00 Civ. 4969 RCC HBP, 2002 U.S. Dist. LEXIS 12540, 2002 WL 1484391 (S.D.N.Y. July 11, 2002) - is distinguishable in light of Plaintiff's new allegations.  In *Tookes*, the district court found that the prisoner had not alleged any atypical and significant hardship, and thus had not alleged the loss of a liberty interest, because "the only detail that can be discerned from the complaint is that [the prisoner's] confinement lasted 96 days."  Here, Plaintiff has now alleged more details than the mere length of his disciplinary confinement.

      After Defendants filed the pending motion, the Second Circuit issued a decision discussing procedural due process claims arising from disciplinary confinement.  *Davis v. Barrett*, 576 F.3d 129 (2d Cir. 2009).  This decision illustrates that the Second Circuit strongly

discourages district courts from finding as a matter of law that a prisoner was not subjected to atypical and significant hardships without the benefit of a fully developed record.  In *Davis,* a correctional officer recommended that a prisoner be administratively segregated.  The DOCS hearing officer who presided over the ensuing administrative hearing did not call the correctional officer or his confidential informants to testify and, relying entirely on the officer's written recommendation, sentenced the prisoner to administrative segregation in the SHU.  The prisoner served approximately 55 days in the SHU.  The hearing officer's decision was ultimately administratively reversed because the hearing officer did not hear testimony from the correctional officer or assess the reliability of the informants on whose reports the correctional officer's recommendation was based.  *Davis*, 576 F.3d at 130-31.

The prisoner sued the hearing officer, claiming that the officer violated his procedural due process rights.   The hearing officer moved for summary judgment.  The hearing officer presented affidavits from officers who worked in the SHU while the prisoner was confined there, stating that the prisoner had been confined pursuant to normal SHU standards.  These affidavits were disputed by the prisoner, who stated that he was denied privileges, that his cell had no furniture, that his mattress was infected with bodily waste, and that his cell was subject to daily flooding including feces and urine thrown by other inmates.  After examining this evidence, the district court granted the hearing officer's motion for summary judgment, finding "that a 55-day period was insufficient to establish a liberty interest in the absence of conditions more onerous than normal for SHU."  *Davis*, 576 F.3d at 131, 134.

The prisoner appealed.  The Second Circuit summarized its prior precedents as holding that:

> A prisoner's liberty interest is implicated by prison discipline, such
> as SHU confinement, only if the discipline imposes an atypical and
> significant hardship on the inmate in relation to the ordinary
> incidents of prison life.  Factors relevant to determining whether
> the plaintiff endured an atypical and significant hardship include
> the extent to which the conditions of the disciplinary segregation
> differ from other routine prison conditions and the duration of the
> disciplinary segregation compared to discretionary confinement ...
> [R]estrictive confinements of less than 101 days do not generally
> raise a liberty interest warranting due process protection, and thus
> require proof of conditions more onerous than usual ... SHU
> confinements of fewer than 101 days could constitute atypical and
> significant hardships if the conditions were more severe than
> normal SHU conditions or a more fully developed record showed
> that even relatively brief confinements under normal SHU
> conditions were, in fact, atypical.

*Davis*, 576 F.3d at 133.

The Second Circuit stated that in light of this precedent, the district court "was required to examine the conditions of confinement 'in comparison to the hardships endured by prisoners in the general population, as well as prisoners in administrative and protective confinement.'" *Davis*, 576 F.3d at 134 (quoting *Welch v. Bartlett*, 196 F.3d 389, 392-93 (2d Cir. 1999)).  The court noted that under its precedents a "detailed factual record" is required unless "the period of time spent in SHU was exceedingly short - less than 30 days - and there is no indication that the plaintiff endured unusual SHU conditions."  *Id*. at 135 (citing *Palmer*, 364 F.3d at 65-66).  The Second Circuit found that the district court had failed to conduct this examination properly because "the record lacks any evidence of the conditions for other inmates in administrative confinement, or in the general prison population."  *Id*.  Because the conditions of the prisoner's confinement were in dispute and because the factual record was not fully developed, the Second Circuit declined to reach the ultimate issue of whether the prisoner had demonstrated a liberty interest or whether the administrative hearing violated his due process rights.  *Id*.  Rather, the

12

Second Circuit vacated the district court's judgment and remanded the matter for further fact-finding. *Id*. at 130.

Here, the time Plaintiff spent in disciplinary confinement was not "exceedingly short" and the second amended complaint, read liberally, plausibly suggests that Plaintiff endured unusual SHU conditions because Plaintiff has alleged that he was deprived of medication, moved to a top bunk, and assaulted. Thus, under *Davis* and the Second Circuit's other precedents, a detailed factual record is required to determine whether Plaintiff was deprived of a liberty interest. Therefore, I cannot find on the basis of the current record that Plaintiff was not deprived of a liberty interest.

        b.    *All Process Due*

Defendants focus entirely on the issue of whether Plaintiff has adequately alleged that he was deprived of a liberty interest. Defendants do not address, even cursorily, the second prong of the procedural due process analysis: whether Plaintiff has adequately alleged that he was deprived of due process before being deprived of that interest. I will address this issue *sua sponte*.

As discussed above, due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004). In some circumstances, such as where the inmate is illiterate or where the complexity of an issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension

of the case, an inmate may also be entitled to assistance from another inmate or from prison staff in preparing his defense.  *Id*. at 570.

Here, Plaintiff alleges that Defendant Badger breached unspecified "protocols" set out in DOCS' "Policies and Procedures," that the misbehavior report on which Defendant Badger relied contained "clearly erroneous" information, that Defendant Badger did not give him credit for the 14 days he served in the SHU pending his hearing, and that Defendant Badger's finding was ultimately reversed "as unsubstantiated by the misbehavior report."  (Dkt. No. 15 ¶ 6(2-3); Dkt. No. 31 at 2; Dkt. No. 41.)  Plaintiff does *not*, however, allege that Defendant Badger deprived him of any of the processes outlined in *Wolff*.  This is fatal to Plaintiff's claim that he was denied due process because "[t]he *only* process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*."  *Shakur v. Selsky*, 391 F.3d 106, 119 (2d Cir. 2004) (emphasis in original).  Thus, Plaintiff has not alleged facts plausibly suggesting that he was denied the process constitutionally required.  The second amended complaint, therefore, will only state a procedural due process claim if it contains facts plausibly suggesting that Defendant Badger's decision was not based on "some evidence."

        c.    *Some Evidence*

"Once a court has decided that the procedural due process requirements have been met, its function is to determine whether there is some evidence which supports the decision of the prison disciplinary board."  *Freeman v. Rideout*, 808 F.2d 949, 954 (2d Cir. 1986). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record [before the disciplinary board]

14

that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985).

Plaintiff implicitly alleges that Defendant Badger's decision was not based on "some evidence" because it was administratively reversed. However, this fact is insufficient to plausibly suggest that Defendant Badger's decision was not supported by "some evidence." "New York law requires prison disciplinary rulings to be supported by sufficiently relevant and probative information to constitute *substantial evidence*. This requirement is sterner than the 'some evidence' standard necessary to afford due process." *Sira v. Morton*, 380 F.3d 57, 76 n. 9 (2d Cir. 2004) (emphasis added). Plaintiff admits that he offered information to Defendants in exchange for special consideration of his wake visit request. Although DOCS may have found that this evidence was not "substantial," it is sufficient to satisfy the lower due process standard of "some evidence" to support Defendant Badger's decision to find Plaintiff guilty of extortion. Therefore, I recommend that Plaintiff's procedural due process claim be dismissed.

2.    Wake Visit

As I discussed in my previous Report-Recommendation, Plaintiff's first amended complaint failed to state a procedural due process claim based on the denial of the wake visit because prisoners do not have a constitutionally protected interest in attending the funeral of a relative and no such right has been created in New York by statute or regulation. (Dkt. No. 30 at 21-22.) Plaintiff's second amended complaint does not cure the defect in his previous pleading. Therefore, I recommend that Plaintiff's procedural due process claim regarding the denial of the wake visit be dismissed without leave to amend.

15

**D.     The Second Amended Complaint Does Not State a Retaliation Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state a cause of action for retaliation because the alleged adverse action (filing charges against Plaintiff and confining him) occurred *before* the alleged protected conduct (filing suit in the Court of Claims regarding the denied wake visit).  (Dkt. No. 30 at 19-20.)

The amended complaint contains new assertions about allegedly protected conduct that preceded the misbehavior report that led to Plaintiff's SHU and S-Block confinement. Specifically, Plaintiff now alleges that he offered information about the mental state of an inmate who died in the SHU to Defendant Naughton "in exchange for special consideration" regarding the wake visit for which he had applied.  (Dkt. No. 31 at 2.)  In response to his offer, Defendant Naughton set up a meeting between Plaintiff and Defendant Adamik.  *Id*.  "As a result of this meeting," Plaintiff was charged with, *inter alia,* extortion and confined to the SHU.  *Id.* Defendants have not addressed these new allegations.

"An allegation that a prison official filed false disciplinary charges in retaliation for the exercise of a constitutionally protected right ... states a claim under § 1983.  A plaintiff alleging retaliatory punishment bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff.  The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report."  *Gayle v. Gonyea*, 313 F.3d 677, 681 (2d Cir. 2002)(citations omitted).

Here, Plaintiff's new allegations do not state a retaliation cause of action.  Plaintiff has not alleged that he was engaged in any constitutionally protected conduct.  Although "[p]risoners ... have a constitutional right of access to the courts and to petition the government for the redress of grievances" *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995), Plaintiff does not allege that his offer to provide information about a deceased inmate's mental state to Defendant Naughton was an attempt to petition the government for the redress of a grievance.  Rather, he alleges that he offered the information  "in exchange for special consideration" of his request for a wake visit.  Further, even if Plaintiff's offer of information to Defendant Naughton constituted constitutionally protected conduct, Plaintiff's admission in his second amended complaint that he offered the information "in exchange for special consideration" shows that he committed extortion, which was the most serious misconduct described in the misbehavior report.  I therefore recommend that the Court dismiss this claim *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2).

### E.    The Second Amended Complaint Does Not State a Substantive Due Process Claim.

In my previous Report-Recommendation, I found that Plaintiff failed to state a substantive due process cause of action because he did not allege "facts plausibly suggesting that Defendants' actions were arbitrary, conscience-shocking, or oppressive in the constitutional sense."  (Dkt. No. 30 at 22-23.)  Plaintiff's second amended complaint does not cure this defect.  Therefore, I recommend that Plaintiff's substantive due process claim be dismissed without leave to amend.

**F.** **The Second Amended Complaint Does Not State a an Equal Protection Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state an equal protection claim. (Dkt. No. 30 at 23-25.) Defendants argue that Plaintiff's second amended complaint fails to state an equal protection claim. (Defs.' Mem. of Law at 14.) Defendants are correct. Plaintiff's second amended complaint does not allege facts plausibly suggesting that he was treated differently from any similarly situated individuals. Therefore, I recommend that the Court dismiss this claim without leave to amend.

**G.** **The Second Amended Complaint Does Not State an Eighth Amendment Claim.**

In my previous Report-Recommendation, I found that Plaintiff had failed to state an Eighth Amendment cause of action. (Dkt. No. 30 at 25-27.) Defendants argue that Plaintiff's second amended complaint fails to state an Eighth Amendment cause of action. (Defs.' Mem. of Law at 9-11.) Defendants are correct. Plaintiff's second amended complaint does not add any new facts plausibly suggesting that Defendants violated his Eighth Amendment rights. Therefore, I recommend that the Court dismiss this claim without leave to amend.

**H.** **The Second Amended Complaint Does Not Sufficiently Allege Personal Involvement by Defendants Fischer, Connell, and Naughton and Does Not State a Claim Against Defendants Labriola and Lombardo.**

Defendants argue that Plaintiff has failed to allege that Defendants Fischer, Connell, Naughton, Labriola, and Lombardo were personally involved in any alleged constitutional violation. (Defs.' Mem. of Law at 15-19.) Defendants are correct as to Defendants Fischer, Connell, and Naughton. Further, as discussed below, although the second amended complaint alleges that Defendants Labriola and Lombardo were personally involved in what Plaintiff

18

alleges was a constitutional violation, it fails to allege facts plausibly suggesting that a constitutional violation actually occurred.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal involvement in that unlawful conduct.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).  In other words, supervisory officials may not be held liable merely because they held a position of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996).  Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright*, 21 F.3d at 501 (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

19

The second amended complaint's sole allegation regarding Defendant Fischer is that he is "liable for any willful neglect of duty by [his] subordinates." (Dkt. No. 31 at 3.)  Similarly, Plaintiff alleges that Defendant Connell "designated" Defendant Badger to conduct the disciplinary hearing and that Defendant Badger "was acting on [her] behalf." (Dkt. No. 31 at 2.) These allegations are insufficient to plausibly suggest that Defendants Fischer or Connell were personally involved in any constitutional violation.  Therefore, I recommend that these claims be dismissed without leave to amend.

The second amended complaint alleges that Defendants Connell, Naughton, Lombardo, and Labriola, denied Plaintiff's requests for review of Defendant Badger's decision. (Dkt. No. 31 at 3.)  The affirming of a disciplinary conviction does not constitute personal involvement. *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002).  Therefore, I recommend that these claims be dismissed without leave to amend.

The second amended complaint alleges that Defendants Lombardo and Labriola held Plaintiff in the SHU for 24 days after the administrative reversal of Defendant Badger's decision. (Dkt. No. 31 at 3.)  Defendants acknowledge this allegation in the section of their brief discussing personal involvement (Defs.' Mem. of Law at 16) but have not advanced any arguments specifically addressing this allegation.  The second amended complaint sufficiently alleges that Defendants Lombardo and Labriola were personally involved in what Plaintiff *contends* is a constitutional violation.  However, the second amended complaint does not allege facts plausibly suggesting that a constitutional violation occurred.  As discussed above, when a prisoner alleges that his procedural due process rights were violated by an "exceedingly short - less than 30 days" stint in disciplinary or administrative confinement, the claim is subject to dismissal unless the prisoner also alleges that he "endured unusual SHU conditions."  *Davis*, 576

20

F.3d at 132 (citing *Palmer*, 364 F.3d at 65-66).  Here, Plaintiff does not allege any unusual SHU conditions during the 24-day confinement that he attributes to Defendants Lombardo and Labriola.  The events that he alleges were "unusual" - the denial of medication, the move to a top bunk, and the assault by another inmate - all occurred prior to the dismissal of the disciplinary charges.  Therefore, Plaintiff has not alleged facts plausibly suggesting that Defendants Lombardo and Labriola deprived him of a liberty interest and the claim should be dismissed.

Therefore, I recommend that the Court dismiss the claims against Defendants Fischer, Connell, Naughton, Labriola, and Lombardo.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 38) be **GRANTED** without leave to amend**.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: November 24, 2009
       Syracuse, New York

George H. Lowe
United States Magistrate Judge